UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. SI4:06CR337CEJ(MLM) |
| ) | |
| GARY KAPLAN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE
REGARDING GARY KAPLAN'S MOTION TO DISMISS COUNTS 3-12**

This matter is before the court on defendant Gary Kaplan's Motion to Dismiss the Wire Act Counts (Counts 3 to 12) of the Superseding Indictment. [Doc. 447] The government responded. [Doc. 517] Defendant replied. [Doc. 554]

In his Motion defendant Gary Kaplan challenges the sufficiency of the Superseding Indictment on the grounds that the government's construction of the Wire Act, 18 U.S.C. § 1084,[1] is so broad that the Act would prohibit a wide range of transmissions never

---

[1]     18 U.S.C. § 1084 states in pertinent part:

**(a) whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting even or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned not more than two years or both.**

18 U.S.C. § 1084(a).

Subsection (b) of the statute carves out an exception instructing that the Wire Wager Act shall not be construed

to prevent the transmission in interstate or foreign commerce of information

previously viewed as falling under Act; in addition, he argues that the allegations in Counts 3-12 fail to provide him with adequate notice of the charges against him.

## I.    APPLICABLE LAW GENERALLY

To be legally sufficient on its face, an indictment must contain all the essential elements of the offenses charged, it must fairly inform the defendant of the charges against which the defendant must defend, and it must allege sufficient information to allow the defendant to plead a conviction or an acquittal as a bar to a subsequent prosecution. United States Const. Amends. V and VI; Fed.R.Crim.P. 7(c); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Just, 74 F.3d 902, 903-04 (8th Cir. 1996); United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993), cert. denied, 513 U.S. 831, (1994); United States v. Young, 618 F.2d 1281, 1286 (8th Cir.), cert. denied, 449 U.S. 844 (1980).

The sufficiency of an indictment is to be judged by practical, not technical considerations.  Hanf v. United States, 235 F.2d 710, 714 (8th Cir.), cert. denied, 352 U.S. 880 (1956).  An indictment is nothing more than a formal charge by which a defendant is brought to trial.  Id.

> The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

---

for use in news reporting of sporting events or contests, or for the transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State or foreign country where betting on that sporting event or contest is legal into a State or foreign country in which such betting is legal.

18 U.S.C. § 1084(b).

United States v. Goldberg, 225 F.2d 180, 184 (8th Cir. 1955); see also Costello v. United States, 350 U.S. 359, 363-64 (1956) (the test of the sufficiency of the government's evidence should come at trial, not in challenges to the indictment); United States v. Hirsch, 360 F.3d 860, 863 (8th Cir. 2004) (defendant's motion to dismiss amounts to request for court to determine guilt or innocence based on facts which the jury should decide at trial).

The Superseding Indictment is a plain, concise and definite statement of the essential facts constituting the offenses charged in Counts 3-12 and complies in all respects with Rule 7 of the Federal Rules of Criminal Procedure. It tracks the language of the statute and places the defendant on notice of the nature and extent of the charges in order to protect him from double jeopardy. See Hamling, 418 U.S. at 117; United States v. Just, 74 F.3d at 903-04; Young, 618 F.2d at 1286.

## II.   COUNTS 3-12 AS VIOLATIONS OF THE WIRE ACT

### A.   The Wire Act is Not Limited to Sports Wagers

Defendant claims that the Wire Act was enacted to target illegal sports betting, and that it does not apply to other types of gambling, such as casino-style gambling. In support of his argument defendant cites In re: MasterCard Intern. Inc. Internet Gambling Litigation, 132 F.Supp.2d 468 (E.D.La. 2001), aff'd. 313 F.3d 257 (5th Cir. 2002).

The MasterCard case involved a civil RICO claim brought against the credit card company in an attempt to recoup monies paid to illegal Internet gambling websites.

This court respectfully disagrees with the Mastercard cases. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Engine Manufacturers Ass'n. v. South Coast Air Quality Mgmt. District, 541 U.S. 246, 252 (2004) citing Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985). Although not a

model of legislative drafting, the statute at issue was meant to include both sports betting and other types of betting or it would not have twice specifically repeated the phrase "transmission of information assisting in the placing of bets or wagers" as applying only to "any sporting event or contest". This is the phrase used in subsection (a) and it is repeated in the exception carved out in subsection (b), that is, the transmission of information assisting in the placing of bets or wagers on any sporting event or contest where it is legal in both the sending and receiving jurisdictions. Subsection (b) does not except all bets and wagers where legal in both sending and receiving jurisdictions, only information assisting in placing of bets or wagers on sporting events where legal in both sending and receiving jurisdictions. When the "transmission of information assisting in the placing of bets or wagers" is applied to receiving money or credit therefrom, the sports gambling phrase is specifically omitted. We must therefore assume Congress intended that the phrase "bets or wagers on any sporting event" is different from other "bets or wagers".

The statute is couched in the disjunctive and creates two distinct offenses: (1) the use of a wire communication facility for the interstate or foreign transmission of (a) bets or wagers or (b) information assisting in the placing of bet or wagers on a sporting event or contest; or (2) the transmission of a wire communication which entitles the recipient to receive money or credit as a result of (a) bets or wagers or (b) information assisting in the placing of bets or wagers.

Judicial inquiry into the meaning of a statute ends when the words of a statute are clear and unambiguous. See Pierpoint v. Barnes, 94 F.3d 813, 817 (2nd Cir. 1996), cert. denied, 520 U.S. 1209 (1997). If the District Court should find that this enactment is subject to more than one reading, legislative history may be used to shed light. Here, the legislative history sheds light on congressional intent:

> **The purpose of the bill is to assist the various States and the District of Columbia in the enforcement of their laws pertaining to gambling, bookmaking and like offenses and to aid in the suppression of organized gambling activities by prohibiting the use of wire communication facilities which are or will be used for the transmission of bets or wagers and gambling information in interstate and foreign commerce.**

House Report No. 967, 87th Cong. 1st Sess. (1961). In addition, the Senate Committee on the Judiciary Report stated that the purpose of the Bill was "with respect to the transmission of bets, wagers, and related information, to assist the several States in the enforcement of their laws pertaining to gambling and to aid in the suppression of organized gambling activities by restricting the use of wire communication facilities." Senate Report No. 588, 87th Cong., 1st Sess. July 24, 1961. These Reports indicate clearly that the Bill was intended to apply to gambling in general and not only to sports gambling. "A committee report representing a collective statement by the drafters about the intended purpose of proposed legislation is considered a particularly good indicator of Congressional intent when it is otherwise difficult to ascertain." Pierpoint, 94 F.3d at 817.

Another rule of statutory construction also applies to the Wire Wager Act. If Congress had intended the Wire Wager Act to apply to sports betting alone, it could have said so - - but it did not. See Clark v. Arizona, ___U.S.___ 126 S.Ct. 2709, 2723 (2006)(usual rule of statutory construction is that the court should give effect to each clause and word of a statute); see also Hamdan v. Rumsfeld, ___U.S.___ 126 S.Ct. 2749, 2765-66 (2006) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Thus the exclusion of the words "on any sporting event or contest" from three of the prohibitions in subsection (a) of the statute and the specific inclusion of the words in the

- 5 -

exception in subsection (b) of the statute mean that Congress intended just that: making illegal wire communications for bets or wagers and for entitlement to receive money or credit for bets or wagers and for entitlement to receive money or credit for information assisting in the placing of bets or wagers as separate and distinct from information assisting in the placing of bets or wagers on sporting events or contests.

In addition, subsection (d) deals with facilities being used "for the purpose of transmitting or receiving gambling information." It does not limit its application to sports betting but includes the transmission of all gambling information. This is consistent with subsection (a) and is further proof of Congressional intent.

In addition, new legislation which was enacted towards the end of 2006 supports the proposition that the statute applies to bets or wagers not limited to sports events in the prohibition on funding of unlawful Internet gambling through credit cards or wire transfers, 31 U.S.C. §§5361-5367. In this legislation "bet or wager" is defined:

> (1)   Bet or Wager - - The term 'bet or wager' - - (A) means the staking or risking by any person of something of value upon the outcome of a contest of others, a sporting event, or a game subject to chance, upon an agreement or understanding that the person or another person will receive something of value in the event of a certain outcome; ...[and] (D) includes any instructions or information pertaining to the establishment or movement of funds by the better or customer in, to or from an account with the business of betting or wagering. ...

31 U.S.C. § 5362(1)(A) and (D). Based on this statute, it is clear that Congress considered non-sports wagering through the use of wire communications facilities to be illegal at the time this legislation was passed.

Recently the Eighth Circuit has stated:

> The prohibition in § 1084(a) encompasses bets and wagers as well as information assisting bets and wagers, whereas the exception in § 1084(b) is limited to information assisting bets and wagers. Thus the plain language suggests that Congress intended to prohibit all interstate wagering by wire,

> whether or not legal in the states between which the bets are transmitted. There is no explicit support for this interpretation in the legislative history. See H.Rep. No. 87-967(1961) *as reprinted in 1961 U.S.C.C.A.N. 2631, 2633.* One unreported case reflects a federal indictment broadly construing § 1084 in this fashion and the district court denying defendant's motion to dismiss. See United State v. Ross, No. 98 CR 1174-1(kmv), 1999 WL 782749, at *3 (S.D.N.Y. Sept. 16, 199).  Two circuits have addressed the scope of the § 1084(b) exception without deciding this issue.  See United States v. Cohen, 260 F.3d 68, 73-74 (2nd Cir. 2001); Sterling Suffolk Racecourse Ltd. P-Ship v. Burrillville Racing Ass'n., Inc., 989 F.2d 1266, 1272-73 (1st Cir. 1993).

United States v. Bala, 489 F3d 334, 342 (8th Cir. 2007).

In addition, a very recent case from the District of Utah holds the Wire Act is not limited to sports betting. United States v. Baron Lombardo, 2007 WL 4404641 (D.Utah December 13, 2007). The Lombardo court concluded "that § 1084(a) is not confined entirely to wire communications related to sports betting or wagering." Lombardo, at *6. Lombardo's analysis is detailed and thorough and is incorporated by reference as if fully set out herein. The fact that the Lombardo pleadings and the pleadings in the instant case are very similar, tends to make the Lombardo decision even more persuasive. [2]

In conclusion, based on the language of the statute, the legislative history, the logical interpretation of the statute and the available case law, the court finds that § 1084(a) is not limited to sports betting but includes other kinds of gambling as well.[3]

---

[2] The court notes defendant Gary Kaplan's express displeasure that the Lombardo defendants "plagiarized" his pleadings, his intimation that the government's "lack of candor" caused a "messy ethical situation" and his allegation that the government misled the court because there was no Reply filed in Lombardo. The court finds defendant's complaints in a series of communications about the Lombardo pleadings to be so thoroughly without merit as to deserve no further comment. In any case relied on for precedent, not just Lombardo, this court looks to the decision of the court, not the pleadings of the parties.

[3] As pointed out by the government in its response to defendant Kaplan's Motion "evidence of non-sports gambling would be admissible for other purposes than proving a violation of the Wire Wager Act. As the government has stated, a Rule 404(b) notice will be prepared and provided to defense counsel as quickly as possible after the

### B. Counts 3-12 Charge Violations of the Wire Act

Defendant claims the transmissions alleged in Counts 3-12 of the Superseding Indictment do not qualify as (1) bets or wagers; (2) information insisting in placing bets or wagers on any sporting event or contest; (3) information which entitles a recipient to receive money or credit as a result of bets or wagers; or (4) information assisting in the placing of bets or wagers. The Wire Act Counts in the Superseding Indictment specifically allege that defendants Gary Kaplan and Norman Steinberg and others were in the business of betting and wagering and knowingly used a wire communications facility for the four purposes set out immediately above and further allege the following transmissions:

- Counts 3, 4 and 5: telephone transmissions of instructions for ongoing wagering accounts and directions to send money to wagering accounts;

- Counts 6, 7 and 8: telephone transmissions of instructions to send money to wagering accounts;

- Count 9: Internet communication to confirm a wagering account balance;

- Counts 10 and 11: transmission of wagers;

- Count 12: telephone transmission requesting withdrawal of money from wagering account.

---

Court has ruled on the pretrial motions in this case. However, it is possible for the Government to state now that, should the Court rule that the Wire Wager Act applies only to sports betting, the United States will seek to offer evidence that the Gambling Enterprise was engaged in non-sports gambling as well, pursuant to Federal Rule of Evidence 404(b). The United States also takes the position that this evidence would be admissible to prove the RICO conspiracy as well as a separate basis for admissibility at trial. See United States v. Anwar, 428 F.3d 1102, 1109-11 (8th Cir. 2005); United States v. Whipple, 414 F.3d 887, 892 (8th Cir. 2005) ("Such evidence is not of 'other crimes' but rather is evidence of the very crime charged.")." Gov.'s Response (Doc. 517) at 16.

In addition the undersigned has outlined an appropriate remedy if the District Court should agree with the Mastercard decisions. See R&R of United States Magistrate Judge Concerning David Carruthers' Motion to Dismiss Count I (Doc. 339) at 7-9.

Superseding Indictment, ¶39 at 1819, incorporating by reference ¶s 19, 27 and 32.

1.      The Rule of Lenity and Limitation to Sports Betting

Defendant Gary Kaplan argues the government's reading of the Wire Act is overly broad.  He maintains a narrower reading of the Act is consistent with the requirement that criminal statutes should be construed narrowly, that is, the rule of lenity, which states that penal statutes should be strictly construed in favor of the defendant and against the government.  United States v. Wiltberger, 18 U.S. 76 (1820).  Although Wiltberger, unquestionably states the principal, it goes on to say:

> The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself.  It is founded on the tenderness of the law for the rights of individuals; and on the plain principal that the power of punishment is vested in the legislative, not the judicial department. . . .
>
> It is said, that notwithstanding this rule, the intention of the law maker governs in the construction of penal, as well as other statutes. . . .the maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend.  The intention of the legislature is to be collected from the words they employ.  Where there is no ambiguity in the words, there is not room for construction.

Wiltberger, 18 U.S. at 95-96.

In this case the legislative history may shed light on Congress' intent not to limit the Act to sports betting.  However, the bottom line is that the plain language of the Wire Act controls.  See United States v. McCall, 439 F.3d 967, 971 (8th Cir. 2006) ("When a statute's plain language is clear, it is controlling, without regard to contrary hints in the legislative history. . ."). "The rule of lenity is a tie-breaker when there is an otherwise unresolved ambiguity." United States v. White, 888 F.2d 490, 497 (7th Cir. 1989).  "The rule should not be applied where it would conflict with the implied or express intent of Congress; rather, it provides an interpretive guideline where congressional intent is unclear." United

States v. Montgomery, 14 F.3d 1189, 1198 n.8 (7th Cir. 1994) citing Liparota v. United States, 471 U.S. 419, 427 (1985).

Defendant proposes the application of the rule of lenity because under defendant's theory the Act only applies to sports betting and Counts 3-12 do not specify wagering on sporting events.  The court has found that the Wire Act is not limited to sports betting however, even using the narrowest construction, the Superseding Indictment is not deficient.  Paragraph 39 specifically incorporates paragraphs 19, 27 and 32 of the Superseding Indictment which deal with sports betting. [4]  The rule of lenity applies where there exists a "grievous ambiguity" in the statute.  See United States v. Cohen, 260 F.3d 68, 76 (2nd Cir. 2001) citing Huddleston v. United States, 415 U.S. 814, 831 (1974) such that "after seizing everything from which aid can be derived, [a court] can make no more than a guess as to what Congress intended."  Cohen, 260 F.3d at 76 citing Reno v. Koray, 515 U.S. 50, 65 (1995) (internal quotation marks and citations omitted).  It is clear in this case that the provisions of § 1084 apply to defendant's conduct.  Of particular significance is the fact that the allegations in the Superseding Indictment are clearly sufficient for the government to be allowed to present its case to the jury.  If the government does not meet its burden of proof at trial that the transmissions at issue are covered by the Wire Act, defendant may move for a judgment of acquittal under the Federal Rules of Criminal Procedure.

---

[4] Paragraph 19 states that the Gambling Enterprise "offer[ed], facilitate[ed] and conduct[ed] unlawful and computer telephone service based on sports betting...[and] cause[ed] the operation of toll-free telephone services to facilitate sports gambling and to take sports bets." Paragraph 27 alleges that the Gambling Enterprise "solicited millions of illegal bets on sports and sports events. ..." Paragraph 32 states that the Gambling Enterprise "illegally accept[ed] and record[ed] millions of sports wagers...and...transmit[ted] information facilitating the acceptance of illegal wagers. ..." These allegations are sufficient to charge the offense even under defendant's narrow interpretation of the Wire Wager Act.

### 2.     The Need for Actual Placing of a Bet

Defendant argues that "information assisting in the placing of bets or wagers" can only be proved if a bet or wager is actually placed. Defendant argues that if "tangential" information that assists wagering were included, the Wire Act could be expanded almost endlessly. Defendant states that "the proper interpretation of information assisting in the placing of bets or wagers should only include transmissions that directly relate to the decision to place a particular bet or wager, such as the giving of odds on a particular sporting event." Motion to Dismiss Counts 3-12 (Doc. 447) at 9.

This is not a reasonable reading of the statute. Section 1084(a) prohibits the transmission of bets or wagers <u>and</u> the transmission of "information assisting in the placing of bets or wagers." It does not limit its prohibition to the transmission of information <u>resulting</u> in the placing of bets or wagers. Defendant's reliance on <u>Truchinski v. United States</u>, 393 F.2d 627 (8th Cir. 1968) is misplaced. The chief issues in <u>Truchinski</u> were whether the defendant was engaged in the business of betting or wagering and whether § 1084 violated the free speech clause of the First Amendment. There was one phone call about which Truchinski argued there was no showing of any information which could in any matter assist the gambler in making a bet. The issue was the vagueness of the conversation. The court said that "[c]onsidering the method of operation of those generally engaged in the taking of bets, the frequency with which [gambler] would place bets with Truchinski, plus the fact that a bet was placed, the conversation clearly demonstrates prescribed activity under the statute." <u>Truchinski</u>, 393 F.2d at 631. The court clearly did not hold that the placing of a bet was a necessary requisite or that the statute required a one-on-one correlation between information and a bet. The court was merely clarifying

that in spite of the vagueness of the conversation at issue, it was in fact information assisting in the placing of bets or wagers because, in part, a bet was placed.

Several cases establish that information assisting in the placing of bets need not necessarily result in a specific bet.  For example, in United States v. Scavo, 593 F.2d 837 (8th Cir. 1979) where the issue again was whether the bookmaker was engaged in the business of betting and wagering, the Eighth Circuit court said:

> The evidence showed that appellant furnished line information to [the bookmaker] on a regular basis; that [the bookmaker] relied on this information; that some sort of financial arrangement existed between appellant and [the bookmaker]; and that appellant was fully aware of [the bookmaker's] bookmaking operation; and that accurate and up-to-date line information is of critical importance to any bookmaking operation.

Scavo, 593 F.2d at 842.  There is no allegation that the defendant in Scavo ever took a bet, or that the information he transmitted resulted in a particular bet or wager.

In United States v. Kelley, 395 F.2d 727, 729 (2nd Cir. 1968) the court found that a defendant who ran his bookmaking operation by way of a message service was transmitting "information assisting in the placing of bets or wagers" prior to the point when bets were actually taken.

> The telephone calls to the "[message number] informed [the defendant] that someone was ready to place a bet and how that person could be reached." This is certainly "information assisting in the placing of bets or wagers" within the meaning of 18 U.S.C. § 1084.

Kelley, 395 F.2d at 729.

In United States v. Cohen, 260 F.3d 68 (2nd Cir. 2001) the defendant argued that under his sportsbook's account-wagering system, the transmission between his sportsbook and its customers contained only information that established the sportsbook itself to place bets entirely from customer accounts located in Antigua.  The court held that the distinction was immaterial based on the testimony regarding how the sportsbook operated:

"Section 1084(a) prohibits the transmission of information assisting in the placing of bets as well as the transmission of bets themselves." Id. at 75.

Defendant further argues that the Wire Act could be expanded almost endlessly to include information that "tangentially assisted wagering" if the Act is construed broadly. Defendant gives two hypotheticals that are fairly preposterous applications and have to do with making hotel reservations and opening a hotel account. In defendant's hypos, there is no communication regarding betting or wagering, rather the communications have only to do with action that might take place before a gambler traveled to Las Vegas to place his bets.

The Eighth Circuit has held that "transmissions" in the Wire Act covers both the sending and receiving of wagering information. United States v. Reeder, 614 F.2d 1179, 1184-85 (8th Cir. 1980).[5] Thus, the allegations in the Superseding Indictment regarding opening or funding a wagering account or confirming the amount of money available in a wagering account, see Superseding Indictment Counts 6-9 and 12, are transmissions covered by the Act. Again, the statute does not require a one-to-one correlation between a transmission and a specific bet. See Truchinski, 393 F.2d at 631; Scavo, 593 F.2d at 842.

3.     "Entitlement" to Recover Money or Credit

---

[5]     Reeder, 614 F2d at 1184-85 adopts the prevailing view that "the statute forbids the use of interstate facilities for sending or receiving wagering information." citing United States v. Pezzino, 535 F2d 483, 484 (9th Cir.), cert. denied, 429 U.S. 839 (1976). Accord, United States v. Sellers, 483 F.2d 37, 44-45 (5th Cir. 1973), cert. denied, 417 U.S. 908 (1974); United States v. Tomeo, 459 F.2d 445 (10th Cir.), cert. denied, 409 U.S. 914 (1972); Sagansky v. United States, 358 F.2d 195 (1st Cir. 1966). See also E. Devitt & C. Blackmar, Federal Jury Practice and Instructions s 61.18 (1977) ("a 'wire communication facility' would include long distance telephone facilities; and information conveyed or received by telephone from one state into another ***would constitute a transmission in interstate***commerce***.").

Defendant argues that Counts 3-9 and 12 do not allege transmissions that entitle the recipient of the transmission to money or credit resulting from bets or wagers. Defendant then jumps to the conclusion that therefore counts 3-9 and 12 must be dismissed. This argument is without merit because it ignores the fact that § 1084 is couched in the disjunctive. There are other subsections of § 1084 upon which the government may rely. If the government relies at trial on this particular subsection of the Act, and the court finds that the government has not met its burden of proof, defendant may move for a judgment of acquittal. However, at this stage of the proceedings the counts clearly should not be dismissed and the government should be permitted to make its case.

### III.   COUNTS 3-12 PROVIDE ADEQUATE NOTICE OF THE CHARGES AGAINST DEFENDANT

Defendant restates his argument that the Superseding Indictment is ambiguous in this claim that Counts 3-12 do not provide enough particularity for him to understand and defend against the allegations.

> There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Second, . . . the canon of strict construction of criminal statutes, or rule of lenity, insures fair warning by resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. Third, . . .due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope. In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendants' conduct was criminal.

United States v. Lanier, 520 U.S. 259, 266-67 (1997) (internal citations omitted).

Defendant's arguments again appear to relate to and repeat whether or not non-sports betting is included within the scope of the Wire Wager Act. This has been

- 14 -

thoroughly covered above in Section II, A and B.  Removing references to non-sports wagers from the Superseding Indictment does not change the offenses charged nor deprive the defendant of the ability to meet the charges and defend himself.

> In Salinger v. United States [272 U.S. 542 (1927)] we explicitly held that where an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment.

United States v. Miller, 471 U.S. 130, 136 and 145 (1985).

> Therefore the most due process requires is
>
> that people should not be branded as criminals without fair notice that the legislature has forbidden certain conduct.  This does not mean, however, that a defendant will receive the benefit of the narrowest possible construction of a criminal statute.  "All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden."

United States v. Hammond, 821 F.2d 473, 477 n. 6 (8th Cir.) quoting Rose v. Locke, 423 U.S. 48, 50 (1975), cert. denied, 484 U.S. 986 (1987).

## IV.   CONCLUSION

Defendant's arguments concerning his interpretation and application of the Wire Wager Act are not supported by the language of the statute or the applicable case law.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant Gary Kaplan's Motion to Dismiss the Wire Act Counts (Counts 3 to12) of the Superceding Indictment be **DENIED**. [Doc. 447]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may

**result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).**

                                                /s/Mary Ann L. Medler
                                                **MARY ANN L. MEDLER**
                                                **UNITED STATES MAGISTRATE JUDGE**

**Dated this   20th    day of  March, 2008.**